IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALBERTO OCANA, | ) | CASE NO. 1:04-cv-12607-JLT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
| E.D.S. PERSONAL COMMUNICATIONS | ) | **SUPPORT OF DEFENDANT** |
| CORPORATION, | ) | **ELECTRONIC DATA SYSTEMS** |
| | ) | **CORPORATION'S MOTION FOR** |
| Defendant. | ) | **SANCTIONS** |
| | ) | |

## I.  INTRODUCTION

Throughout this litigation, Plaintiff Alberto Ocana has "hid the ball" and stonewalled EDS' efforts to assess and defend itself against his claims of alleged national origin and race discrimination and an alleged violation of the Family and Medical Leave Act ("FMLA").  Ocana has thwarted his Rule 26 obligations and defied this Court's May 10, 2006 Order to provide EDS with discoverable information.  EDS now seeks to limit the prejudice inflicted against it by requesting that the Court enter an additional Order imposing the following sanctions against Ocana:

1. Barring Plaintiff from seeking damages for emotional distress;

2. Barring Plaintiff from presenting evidence of back pay damages;

3. Barring Plaintiff from presenting evidence in support of his claims which is described in his personal notes made during his employment with EDS; and

4. Ordering Plaintiff to pay $3012.50 representing EDS' costs and attorneys' fees incurred in preparing its Motion to Compel and the instant Motion.

## II.    FACTS RELEVANT TO THE INSTANT MOTION

On May 10, 2006, this Honorable Court granted EDS' Motion to Compel Plaintiff to produce documents and information related to:

a.      Ocana's efforts to obtain employment since his separation from EDS;

b.      any compensation he has been paid through interim employment;

c.      his claim for emotional distress damages; and

d.      the name and address of any health care providers from whom he has received medical treatment and/or counseling.

In the Motion the Court granted, EDS also had requested that the Court order Plaintiff to pay the fees EDS incurred in preparing the Motion to Compel.[1]

On May 17, 2006, Plaintiff only partially complied with the Court's Order by sending EDS a copy of Plaintiff's resume and correspondence regarding his search for employment after his discharge from EDS.   (See ECF # 20.)   Nothing was provided regarding compensation Plaintiff received through interim employment, nor was anything provided regarding Plaintiff's claim for emotional distress damages.  He also did not provide information regarding the identity of any of his health care providers.  It was not until June 6, 2006, during his deposition by EDS, that Plaintiff produced two W-2 forms to EDS' counsel.   However, Plaintiff acknowledged during the deposition that he had additional documentation regarding interim earnings that he had not provided to EDS.  Plaintiff produced additional earnings information to EDS on June 19, 2006, though he still has not provided complete information (e.g., income information for 2002).

It also was learned for the first time during Plaintiff's deposition that Plaintiff made notes regarding the alleged events giving rise to his claims for national origin and race discrimination. (Ocana Dep. p. 30.)  He testified the notes are presently at his apartment in New York city.  (*Id.*

---

[1] EDS sought $800 representing 4 hours of work by Ms. King at $200 per hour.  Ms. King's actual rate on this case is $190, thus EDS is seeking $760 in fees for the Motion to Compel.

at 30-31.) (Exhibit A.)   Unquestionably, Plaintiff had a duty pursuant to Rule 26 to timely produce the notes to EDS, but he did not.  It was not until June 19, 2006 that Plaintiff produced to EDS the pages from his personal notes that he deemed relevant.

Despite the Court's May 10, 2006 Order and his duty under Rule 26, Plaintiff has never produced an iota of information about his claim for emotional distress damages.  During his deposition, he testified that he received mental health counseling, but he has never identified the person from whom he received treatment nor produced any of his treatment records.  Plaintiff also has not remitted payment to EDS for the $760 in fees EDS incurred in preparing the successful Motion to Compel.

## III.  <u>LAW AND ARGUMENT</u>

### A.  <u>Plaintiff Should Be Barred From Seeking Emotional Distress Damages</u>.

Federal Rule of Civil Procedure 37(b)(2)(B) and (C) provide this Court with the authority to bar Plaintiff's claim of emotional distress damages.  The rule provides, in relevant part:

(b)    **Failure to Comply With Order.**

(2)    *Sanctions by a Court in Which Action is Pending*.

If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

*        *        *

(B)    An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters into evidence;

(C)    An order striking out the pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any party thereof, or rendering a judgment by default against the disobedient party. . . .

When a plaintiff fails to permit relevant discovery on his emotional or mental condition, the appropriate sanction is that the plaintiff should not be permitted to claim emotional distress as damages.  In *Bullard v. Roadway Express*, No. 99-6497, 2001 U.S. App. LEXIS 2251 at *6 (6th Cir. Feb. 5, 2001) (see copy attached as Exhibit B hereto), the court affirmed the trial court's dismissal of plaintiff's Title VII action because she refused to provide medical records which the district court deemed "essential to a calculation of damages."  Similarly, in *Young v. Office of the United States Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C. 2003), the court noted that "the Court in this case could bar plaintiff from introducing any evidence on her emotional disability claims because of her failure to provide medical records and cooperate with the independent medical examination."  The court only held that issue-related sanctions were not necessary because dismissal of the entire case was warranted.  Moreover, in an analogous situation, the Court in *Jankins v. TDC Mgt. Corp., Inc.*, 21 F.3d 436, 444 (D.C. Cir. 1994), affirmed the trial court's imposition of discovery sanctions against defendants, barring them from presenting evidence to oppose a number of plaintiff's claims.  The *Jankins* court also precluded the uncooperative defendants from introducing evidence in support of their counterclaims.

An Order denying Plaintiff the ability to seek emotional distress damages is just and appropriate to remedy Plaintiff's prejudicial failure to comply with this Court's May 10, 2006 Order.  It is unfair and prejudicial to EDS for Plaintiff to claim as damages that EDS caused him emotional distress, but for Plaintiff to withhold critical information so as to effectively bar EDS from conducting discovery as to the nature and extent of Plaintiff's alleged emotional distress and whether the alleged emotional distress was caused by other events.  This Court already has ordered that EDS is entitled to information regarding Plaintiff's alleged emotional distress, but

Plaintiff has failed to comply with the Court's Order.  Plaintiff's refusal to permit the requested discovery, despite this Court's Order, merits an Order prohibiting Plaintiff from claiming that any emotional distress damages were caused by EDS.

**B.    <u>Plaintiff Should Be Precluded From Presenting Evidence of Back Pay Damages</u>.**

Federal Rule of Civil Procedure 37(b)(2), cited above, also provides this Court with the authority to bar Plaintiff from presenting evidence that he sustained back pay damages. Information pertaining to income Plaintiff earned following his discharge by Defendant is critically relevant to Defendant's ability to prove an offset to the amount of any potential back pay (or even front pay) award in this case.  Plaintiff's failure to comply with the Court's Order to provide complete, additional information on this subject as late as approximately two weeks before the discovery cut off clearly is prejudicial to Defendant.  Defendant not only has been deprived of the opportunity to meaningfully analyze or investigate the details and veracity of the information not provided, but also has been deprived of the ability to identify witnesses and seek additional information during the discovery period and, thus, is prejudiced in its ability to prepare its presentation of critical evidence and argument in the defense of this case.  *Compare Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000) (upholding trial court's refusal to allow plaintiff to present lost profits evidence in support of its damages claim because plaintiff did not provide defendant adequate notice that it was seeking lost profits as a measure of diminished value, and thus defendant was not afforded the opportunity to develop a competing valuation theory).

C.    **Plaintiff Should Be Precluded From Presenting Evidence Which Is Described In His Personal Notes Allegedly Made During His Employment With EDS.**

Federal Rule of Civil Procedure 37(c)(1) provides this Court with the authority to preclude Plaintiff from presenting at trial any of the evidence described in the personal notes which he failed to disclose to EDS until June 19, 2006.  The Rule provides in relevant part: "A party that without **substantial justification** fails to disclose information Required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any . . . information not so disclosed." (emphasis added.)

Plaintiff testified at his deposition that he has notes in his possession that he allegedly made contemporaneously with the incidents that he claims gave rise to his claims for national origin and race discrimination.  (Ocana Dep. pp. 30-31.)  However, Plaintiff did not identify or disclose these notes as part of his Rule 26 disclosures.  Plaintiff did not produce any personal notes until June 19, 2006, after his deposition by EDS and only seven business days before the close of the discovery period.  There can be no justification, much less the "substantial justification" required by the Rule, for Plaintiff's failure to disclose notes he authored that are in his possession.  Whether Plaintiff's failure to disclose was willful or not, it warrants exclusion of the notes in support of his claim.  *See Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29 (1st Cir. 2001) (court order compelling discovery need not be issued and violated before district court may impose sanctions for discovery violations under automatic discovery provisions of Rule 26 when failure to disclose information was not substantially justified and was not harmless).

Plaintiff's failure to comply with his Rule 26 obligations is not harmless.  Plaintiff produced only those notes he deemed relevant and he did not produce those notes until seven business days before the close of the discovery period.  Because of Plaintiff's withholding, EDS

has been hampered in its ability to assess the facts of the case, identify appropriate witnesses, and cross-examine Plaintiff about the notes as his deposition.  Plaintiff, not EDS, should be punished for withholding highly relevant documents until after his deposition and the eve of the discovery cut-off date.

      **D.**    **Plaintiff Should Be Required To Pay EDS' Reasonable Costs and Attorneys' Fees in Preparing This Motion and He Should Further be Ordered to Comply With the Court's Order Requiring Him to Pay Its Costs and Fees Incurred In Preparing EDS' Prior Motion to Compel.**

In accordance with Rule 37(a)(4)(A) and Rule 37(c)(1), EDS further requests that this Court order Plaintiff to pay EDS' costs and attorneys' fees incurred in preparing this Motion. Ms. King spent 7.25 hours preparing the present Motion and Memorandum in Support at the hourly rate of $190 and Mr. Posner spent 2.5 hours at the hourly rate of $350.  Thus, EDS is seeking $2252.50 in fees incurred in preparing this Motion.  Also, Plaintiff should be ordered to comply with the Court's order granting EDS' Motion to Compel, which sought $760 in fees incurred in preparing that motion.

## IV.   CONCLUSION

For all of the reasons stated herein, EDS respectfully requests that the Court enter an Order:

1.    Barring Plaintiff from seeking damages for emotional distress;

2.    Barring Plaintiff from presenting evidence of back pay damages;

3.    Barring Plaintiff from presenting evidence in support of his claims which is described in his personal notes made during his employment with EDS; and

4.    Ordering Plaintiff to pay $3012.50 representing EDS' costs and attorneys' fees incurred in preparing its Motion to Compel and the instant Motion.

Respectfully Submitted,

s/ *Kelly M. King*_____
David A. Posner (admitted *pro hac vice*)

7

dposner@bakerlaw.com
Kelly M. King (admitted *pro hac vice*)
kking@bakerlaw.com
Baker & Hostetler LLP
3200 National City Center
1900 East Ninth Street
Cleveland, OH 44114-3485
(216) 621-0200 (telephone)
(216) 696-0740 (facsimile)

Joseph P. McConnell (BBO 566412)
Morgan Brown and Joy, LLP
200 State Street
Boston, Massachusetts 02109
(617) 523-6666
(617) 367-3125 (fax)

Attorneys for Defendant
Electronic Data Systems Corporation

**RULE 7.1 CERTIFICATION**

I hereby certify that I attempted, in good faith, to resolve this matter with counsel for Plaintiff by telephone on June 26, 2006, prior to filing the instant motion, but I was informed he is out of the office until July 5, 2006.


s/ *Kelly M. King*
Kelly M. King

## <u>PROOF OF SERVICE</u>

I hereby certify that a true copy of the foregoing Memorandum of Law in Support of Defendant Electronic Data Systems Corporation's Motion for Sanctions was filed electronically on the 27th day of June, 2006.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system

s/ *Kelly M. King*
Attorney for Defendant

82058, 00173, 501099980.1

# EXHIBIT A

LEXSEE 2001 US APP LEXIS 2251

**DONNA SUE BULLARD, Plaintiff-Appellant, v. ROADWAY EXPRESS, Defendant-Appellee.**

**No. 99-6497**

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

*3 Fed. Appx. 418; 2001 U.S. App. LEXIS 2251*

**February 5, 2001, Filed**

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2001 U.S. App. LEXIS 12370.*

**PRIOR HISTORY:** On Appeal from the United States District Court for the Western District of Tennessee. 99-02422. McCalla. 10-8-99.

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For DONNA SUE BULLARD, Plaintiff - Appellant: John C. Scheeper, Jr., Memphis, TN.

For ROADWAY EXPRESS, Defendant - Appellee: John Marshall Jones, William P. Dougherty, Young & Perl, Memphis, TN.

**JUDGES:** Before: GUY, NORRIS, and SILER, Circuit Judges.

**OPINION:**

[*419] **PER CURIAM.** Plaintiff, Donna Sue Bullard, appeals from the dismissal of her claims against her employer, Roadway Express. The complaint alleged that defendant discriminated against her on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e-5.* Plaintiff, employed as a line-haul truck driver, claimed that she was denied accommodation for her medical condition unless she provided complete medical [**2] records to her supervisor. Two male drivers allegedly received accommodation for their medical conditions based only upon a doctor's letter. Because defendant refused to limit her assignments, plaintiff was disciplined and had to remain on sick leave for seven months.

Plaintiff contends that the district court abused its discretion by dismissing the case for failure to provide initial discovery or comply with a specific discovery order. Also challenged is the district court's finding that plaintiff's failure to disclose her medical records at the time she requested accommodation created a substantive bar to recovery. After review of the record and the arguments presented on appeal, we affirm the dismissal for failure to provide discovery.

I.

During 1995, plaintiff requested a restricted work schedule due to her medical condition and provided a doctor's letter in support of that request. Plaintiff had been diagnosed with endometriosis and fibroid tumors. She was denied accommodation unless she provided her supervisor with a copy of her complete medical records, which she refused to do. Plaintiff filed a charge of sex discrimination with the EEOC, but was not issued a right-to-sue [**3] letter until February 22, 1999. n1

n1 The EEOC right-to-sue letter states that there was "reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged." No settlement could be reached, and the EEOC decided not to sue.

Acting *pro se*, plaintiff commenced this action on May 12, 1999, and defendant filed an answer. The district court sent notice that a scheduling conference would be held on July 2, 1999, along with a copy of the district

court's Standing Order concerning scheduling and status conferences. The Standing Order directs that:

### IV. INITIAL DISCLOSURE

In accordance with *Fed. R. Civ. P. 26(f)*, the parties shall, at least 14 days prior to the scheduling conference, meet for discussions in accordance with Rule 26(f) and for the purpose of preparing a proposed discovery plan. Moreover, within 10 days of the 26(f) meeting (i.e. at least 4 days prior to the first scheduling conference), the parties . . . shall make disclosure pursuant [**4] to Rule 26(a)(1).

Further, the Standing Order states that failure to appear at the scheduling or status conference "or to comply with the directions of the Court set forth herein, may result in an *ex parte* hearing being held and the entry of such order as is just, including a judgment of dismissal with prejudice or entry of a default judgment, or other appropriate sanctions, without [*420] further notice to the party who fails to appear."

Although plaintiff's *pro se* attempt to reschedule the first conference was unsuccessful, a continuance was granted after she obtained counsel. The conference was rescheduled for September 8, 1999, and a second copy of the Standing Order was included with notice of the new date. After the conference on September 8, at which plaintiff's counsel appeared, the district court scheduled a follow-up conference for October 7, 1999, and sent a third copy of the Standing Order with the notice. In addition, the district court specifically ordered (1) that plaintiff provide defendant with a detailed statement of her calculation of damages no later than September 30, 1999; and (2) that she personally appear with counsel at the hearing on October 7, 1999. [**5]

At the hearing, plaintiff, represented by counsel, admitted that she had not provided defendant or the court with a copy of any relevant medical records because she felt defendant was not entitled to such personal and private information. Plaintiff presented a "Statement of Economic Loss," which attempted to list some dates that she missed work due to her condition but did not connect the missed days to a dollar figure. During the hearing, defendant moved to dismiss the complaint, and an order was entered to that effect the next day. This timely appeal followed.

### II.

The district court concisely stated its reasons for dismissing the complaint for failure to provide discovery in its order of October 8, 1999.

As discussed at the Conference, Plaintiff's disclosures are clearly insufficient to comply with the requirements of Rule 26(a)(1)(C) and with the Court's September 9 Order. The discovery rules require parties to disclose "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation [**6] is based, including materials bearing on the nature and extent of injuries suffered . . . ." *Fed. R. Civ. P. 26(a)(1)(C)*.

Plaintiff's medical records are essential to a calculation of damages in this case. Plaintiff seeks damages for lost wages. Yet, for some portion of the time period for which she claims damages, it is undisputed that Plaintiff was either recuperating from surgery or participating in rehabilitation, and therefore unable to work. Additionally, Plaintiff's Statement of Economic Loss contains no information relating to hours worked or hourly pay, information essential to calculating lost wages. Astonishingly, Plaintiff's statement does not contain any reference to a dollar figure. Such disclosures cannot constitute a "computation of damages" under the discovery rules or a "detailed statement of Plaintiff's calculation of damages" under the Court's September 9 Order.

*Fed. R. Civ. P. 41(b)* states that: "For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." The Court finds that Plaintiff has failed to comply both with the discovery rules and [**7] with the September 9 Order of the Court. Further, Plaintiff has not indicated a willingness to disclose her medical records -- documents essential to the resolution of this dispute. Although Plaintiff has the right to protect her privacy by refusing to disclose her medical records, Plaintiff has no right to maintain a civil action in [*421] which she refuses

to disclose relevant documents. A just resolution of this dispute is impossible without the documents Plaintiff refuses to disclose. Pursuant to Rule 41(b), Defendant's Motion to Dismiss is GRANTED.

While the court has authority to dismiss under *Fed. R. Civ. P. 41(b)*, we have been reluctant to affirm a dismissal that merely disciplines an attorney unless there is a clear record of delay or contumacious conduct on the part of the plaintiff. *See Knoll v. Am. Tel. & Tel. Co., 176 F.3d 359, 364 (6th Cir. 1999); Patterson v. Township of Grand Blanc, 760 F.2d 686, 688 (6th Cir. 1985); Carter v. City of Memphis, 636 F.2d 159, 161 (6th Cir. 1980).* When dismissal is based upon the failure to provide discovery, the Supreme Court has indicated that dismissal is properly brought under Fed. R. [**8] Civ. P. 37(b). *See Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197, 210, 2 L. Ed. 2d 1255, 78 S. Ct. 1087 (1958).* In conjunction with the initial disclosure requirements adopted in *Fed. R. Civ. P. 26(a)*, Rule 37(c)(1) expressly authorizes sanctions, including dismissal under Rule 37(b)(2)(C), when a party fails to disclose information without justification and as long as the failure to disclose is not harmless.

Whether dismissal was ordered under Rule 41(b) or 37(b), we review the district court's decision for an abuse of discretion. *See Harmon v. CSX Transp., Inc., 110 F.3d 364, 366 (6th Cir. 1997); Coleman v. Am. Red Cross, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994)* (largely same factors considered in reviewing dismissal under Rule 41(b) or 37(b)). Further, we consider four factors in deciding whether a district court abused its discretion by dismissing a complaint for failure to provide discovery. *See Harmon, 110 F.3d at 366-67* (quoting *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co., 842 F.2d 150, 153-55 (6th Cir. 1988)).* The factors to consider [**9] include: (1) whether the party's failure to cooperate was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate would result in dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Id.* While dismissal is the sanction of last resort, a district court does not abuse its discretion by dismissing a case when other sanctions might be workable as long as dismissal is supported by the facts. *Beil v. Lakewood Eng'g & Mfg. Co., 15 F.3d 546,*

552 *(6th Cir. 1994)* (quoting *Reg'l Refuse Sys., 842 F.2d at 155).*

Plaintiff does not deny that she failed to comply with both the requirements of Rule 26(a)(1)(C) and the district court's specific order that she provide a damage calculation. Nor does she claim that she was unable to comply. In fact, plaintiff appeared in person and failed to indicate a willingness to either provide the medical records or revise her demand calculation. Plaintiff also has not disputed that the medical records were material to defendant's evaluation [**10] of the losses that she claimed resulted from the refusal to accommodate her medical condition. Instead, plaintiff argues only that the district court abused its discretion by dismissing without giving notice that failure to disclose would result in dismissal and without considering any lesser sanctions.

To the contrary, the district court included its warning that failure to comply with the Rule 26(a) discovery requirements could result in dismissal with each of the three orders setting the scheduling conference. When plaintiff had not complied as of the September 8 conference, the district court did not impose sanctions, but, rather, specifically ordered that the damage calculation be provided to defendant by a date [*422] certain and ordered a follow-up conference for October 7. Plaintiff was also directed to appear in person at the October 7 hearing and was afforded an opportunity to be heard. Although filed five months earlier, neither the initial discovery nor the first scheduling conference had been completed at the time of dismissal, even though two adjournments had already been granted.

Finally, the consideration or imposition of a lesser sanction is a factor to be considered, but [**11] the failure of the district court to articulate a lesser sanction does not require reversal. *See Harmon, 110 F.3d at 368.* "We are loathe to require the district court to incant a litany of the available lesser sanctions. Concomitantly, we do not assume that lesser sanctions were not considered simply because their consideration is not articulated." *Id.* When the factors are taken together with plaintiff's continued unwillingness to provide the discovery when directly questioned by the district court, we find that the district court did not abuse its discretion in dismissing the case.

**AFFIRMED.**

EXHIBIT B

1

1                                  Volume:   I

2                                  Pages:   1-184

3                                  Exhibits: 1-3

4       IN THE UNITED STATES DISTRICT COURT

5           FOR THE DISTRICT OF MASSACHUSETTS

6                       C.A. No. 1:04-CV-12607(JLT)

7

8       ----------------------------------

9    ALBERTO OCANA,

10                    Plaintiff,

11      v.

12   E.D.S. PERSONAL COMMUNICATIONS

13   CORPORATION,

14                    Defendant.

15      ----------------------------------

16

17           DEPOSITION of ALBERTO A. OCANA

18      Tuesday, June 6, 2006, 10:09 a.m. to 3:31 p.m.

19            MORGAN BROWN & JOY, LLP

20              200 State Street

21            Boston, Massachusetts

22

23      Court Reporter:  Paulette Cook, RPR/RMR

24

Alberto A. Ocana

30

1    Westcott?

2        A.  Heather Westcott, correct.

3        Q.  When in relation to the comment by Tony did

4    Heather's comment occur?  Before or after?

5        A.  I believe it was after.

6        Q.  Okay.  How long after?  Or if you can tell

7    me when it was, that's fine, too.

8        A.  No, I wouldn't recall the exact time frame.

9    Probably a couple of weeks after.  To the best of my

10   recollection.  I don't recall the exact dates.

11       Q.  Was it still in June, or was it into July of

12   2001?

13       A.  Honestly I don't recall.

14       Q.  Okay.  Did you make any notes regarding

15   these instances of Tony's comment or Heather's

16   comment?

17       A.  Yes, I did make notes.

18       Q.  Do you have those notes today?

19       A.  Not today, no.

20       Q.  Do you know where they are?

21       A.  I can -- I can look into them meaning yes.

22       Q.  Do you know where they are?

23       A.  Yes, I know where they are.

24       Q.  Where are they?

Alberto A.  Ocana

31

1        A.  Probably in my apartment in New York in a

2    notebook.

3        Q.  I'm sorry?

4        A.  In my apartment in New York.

5        Q.  Are they along with other notes that you

6    kept regarding --

7        A.  Hm Hm.

8        Q.   -- things that happened at EDS?

9        A.  Yes.

10       Q.  Okay.  Describe for me are they in a

11   notebook or --

12       A.  They're in a notebook.  I actually would

13   date them.

14       Q.  Describe the notebook for me.  What's it

15   look like?

16       A.  I don't recall what the notebook looks like.

17   It could be a three binder -- actually, I think it

18   was a three binder or a small -- I forget what it's

19   called.  It's a blue -- I don't know what it's

20   called.  It's a smaller sort of notebook situation.

21   But it could be a three-ring binder.  I don't

22   recall.

23       Q.  Did you make those notes regarding the

24   comment by Tony on the day that he made the comment?